The last case this morning is 23-7088, United States v. Ward. Counsel for appellant, if you'd make your appearance and proceed, please. Good morning, almost good afternoon, your honors, and may it please the court, Hunter Haney for Kevin Ward. This appeal concerns several errors that unduly limited Mr. Ward's duress and defense during this close, credibility-driven trial. Unless the court prefers otherwise, I plan to focus on two of those errors, first the Doyle error, and then, time permitting, the instructional errors. Mr. Haney, let me just ask you a logistical question first that relates to the Doyle error. Is there a complete transcript of what Mr. Ward's interview with Detective Black in the record? I mean, I didn't see anything to that effect. Mr. Ward There is not a complete transcript, there was no transcript that was admitted into evidence at trial, so it wasn't included into the record. It was defense exhibits 564, I'd be happy to submit that to the court. Mr. Chodas There was one, correct? Mr. Ward There was one that was produced, but it is not in the record, it was not admitted at trial. Mr. Chodas It was not admitted at trial? Mr. Ward Correct. Mr. Chodas All right, that's fine. Mr. Ward And there is a summary, a pretty specific summary at page 55, volume 1 of the record, that does pretty accurately transcribe exactly. Mr. Chodas All right. Mr. Chodas Not transcribe, but summarize exactly what occurred during the interrogation. Mr. Chodas Got it. Thank you. Mr. Chodas So, turning to that Doyle error, Mr. Ward was tried jointly with his co-defendant, Armenta, but if anything, the joint enterprise was between Armenta and the government, who teamed up to weaponize Mr. Ward's Mirandize post-arrest silence to impeach his testimony regarding his duress. The government then doubled down on this strategy to discredit Mr. Ward's defense in closing. This questioning and argument violated Mr. Ward's due process rights under Doyle versus Ohio and this court's subsequent decision in U.S. v. Canterbury because it was intended to address Mr. Ward's failure to previously mention his duress defense instead of addressing inconsistencies. And this isn't really a close question. The government cites only one moment of questioning, even bordering on an inconsistency, that Ward testified at trial that he shot first while his post-arrest statement suggested otherwise. But even setting aside the other Doyle errors that the government doesn't address in its brief, government's questioning, if you read the transcript carefully from the trial, page 505, didn't even elicit Ward's prior statement that the victim shot first. Just the fact that Mr. Ward shot, that's at page 505 of the record. And that question precedes three consecutive questions about what Ward never or didn't say about his duress. So it's not clear the government was even trying to address the inconsistency that it is now claiming on appeal that it was. And its subsequent questions precisely track what the Supreme Court found impermissible in Doyle and this court found violated due process in Canterbury, Velarde, and Massey. Altogether, this sequence imparted that Ward had an opportunity to say something but stayed silent and it wasn't designed to ferret out the contradiction that Ward had already elicited on direct. On top of that, who shot first didn't even matter to Ward's duress and this court's decision in Canterbury teaches us that any contradiction must be inconsistent with the defense. So setting aside that improper questioning by the government at the beginning, the code defendant then tagged in just a few transcript pages later and focused his questioning as well on what Mr. Ward didn't say to police. What do we do with... Why does that matter? I mean, and perhaps I missed something, why does what his co-defendant did matter at all? Other circuits have so held that that still violates Doyle when a co-defendant... Because we're talking about a defendant's due process, right? It doesn't matter whether the government or the co-defendant or who was the party that was questioning. All that is at issue in a Doyle violation is whether there is an impermissible inference that is being asked to be drawn by some party in the case as to a defendant's exercise of his or her silence. And you say other circuits. We have not held that. This court has not expressly held it. We cite cases at page 40 of our opening brief and the government doesn't dispute this point regarding a co-defendant potentially violating Doyle, but this court, I think, strongly suggested as much in its McClure decision saying such questioning at least lacks probative value. The proper way of addressing it is for a co-defendant to then take the stand and testify against the defendant, which of course didn't occur here. So the co-defendant then asked a sequence of questions about Mr. Ward not mentioning anything about the duress defense. And I won't quote them at length because they're quoted in the briefs. But then on top of that, finally, the government gets up in rebuttal and centers its rebuttal, which of course, because it's in rebuttal, Mr. Ward has no opportunity to dispute at that point on Mr. Ward's prior silence. And that's something that the government hasn't even disputed on appeal that on its own can under this court's cases constitute a Doyle error. Let me ask you, let me go back on the, as it relates to the questioning of the government, there was an objection to that, right? There was no objection. There was no objection. And there was no objection to the questioning by the co-defendant either?  Okay. Yes. And to the extent Your Honor is getting at whether this court should apply plain air review or not, that issue has now been waived because the government hasn't argued any of the relevant prongs, only that no error was made under this court's precedent. More is required under this decision, in this court's decision in Egley. We put an issue, we put in our opening brief, we argued at length, plain air, flagging the issue for the government's review. The government has not argued those prongs, thereby depriving us ultimately of an ability to actually address those prongs in reply. Well, I saw in the government's brief, well, I was going to speak to the government about that, but I mean, let's assume for the moment that the government did not respond to your plain air argument, that nevertheless, I mean, they mentioned plain air, I mean, they didn't, and they said that there was no error. I mean, they acknowledged that you had raised that. And so my point is simply that under plain air, you still bear the burden of showing there was air. Yes. Even if the government didn't contest the rest of that.  Absolutely.  And just accepting, for argument's sake, that the issue isn't waived, this is clear error under settled law that I've already cited under Doyle, under the prior inconsistent statement exception in Anderson, as well as this court's application of those precedents in Massey, Velarde, and Barton, and I want to highlight particularly Barton was a plain air case involving just a singular line on rebuttal. Why didn't Mr. Barton tell police, I've got a gun here, there was a shooting, he had a chance when he was arrested, he didn't say anything, and this court found plain reversible air, highlighted the importance of the Doyle right, and the prosecutors should well know that this is a constitutional violation and an infringement of defendant's rights. And here we have almost verbatim similar language to what was found reversible air in Barton. We have the government complaining that no details were provided about duress, and I'm quoting now, that was his chance, this guy's got me under a spell, not a word, that was his chance, why not? He didn't say anything because it's not true. And then we have Mr. Ward's testimony two years later, and what is he testifying about? Duress. He's on trial, it's a brand new story for the first time, and it magically absolves him of criminal responsibility. This is a textbook Doyle violation, and this court should find plain reversible air under those precedents. If I may, unless the court has further questions on the Doyle air, just very briefly to touch upon the instructional air. So these unfair attacks on Mr. Ward's credibility as manifested through the Doyle air were infinitely more powerful in this case because the court's erroneous instructions that Ward bore the burden of proving duress. It elevated the importance of his testimony. In Dixon, the Supreme Court held that a defendant usually bears the burden of proving duress except where it duress controversial and offense elements such as the intent to injure or malice. The government conceded as much in Dixon. I would encourage the court to review specifically pages 26 and 28 of the oral argument transcript in Dixon, as well as it's very clearly laid out in footnote four of the Dixon opinion that this was a concession that the Solicitor General made to secure the results in that case. And it doesn't actually dispute that proposition really here either. It doesn't address this point about the intent, specific intent or motive being negated here. Three of the four counts, counts two through four, required a specific intent to injure. Yet the court's instructions failed to address that duress's element negating nature. And that's contrary. Where in footnote four did the court speak so broadly in terms of any specific intent crime in Dixon? I don't see that. Well, that's why I would again encourage the court to review the oral argument transcript in Dixon, pages 26 to 28, because there was a prolonged colloquy between Justice Roberts and Justice Scalia and the Solicitor General. Since when did the oral argument transcript become law? Well, no. I mean, I ask you questions. I ask you questions. They don't mean a thing. Absolutely, Your Honor. But I think that the court's point, understood, understood. And I'm not making the argument that it's somehow binding precedent because of that. Well, that's the implication of that argument. I don't care what the oral argument says. The government is a single sovereign. And it's expected to take consistent positions in cases. And that's the only reason I'm raising the point. But I do think, regardless of what the court specifically held in footnote four of Dixon, I mean, it did speak to malice and specific intent in that footnote. This court has since modeled in its own instruction 1.36, noting that under Dixon, the government has to disprove duress when the mains rea is sufficiently elevated. And this is that specific case. Well, our pattern during instruction is not law either, right? Absolutely not. But it was the recommended instruction. And that is the point that we raised with the court during the charge conference. I would also point out that the First Circuit in United States v. Leahy did suggest that assultative crimes were precisely what the Supreme Court was contemplating in Dixon footnote four. So a new trial is at least warranted on those counts, assuming, again, that the court doesn't agree with us on the Doyle issue. So the court at least reversed on those three counts that required specific intent. The fourth count, which is actually count one, the 113A6 count, is what was actually disputed in the briefs. And that charged an assault, which the court specifically defined as a harmful or offensive touching without justification or excuse, resulting in serious bodily injury. Dixon focused specifically on this without justification or excuse language in footnote four as a trigger that would require the government to bear the burden of proof regarding duress. So the government points to the Third Circuit's decision in Taylor as somehow defeating the  But Taylor was a self-defense case, not a duress case, and concerned deleted language in subsection A3, not A6. And Taylor, I think, didn't actually really grapple with a lot of Dixon's language on this point. Dixon at page 14, for example, goes on to address an Eighth Circuit case regarding a specific intent to defraud. There is a lot of analysis regarding specific intent in Dixon. I encourage the court to look at the whole decision. But we think the deletion of the, or the inclusion of that language necessitated a proper instruction regarding the burden of proof. At the very least, it was irretrievably confusing that the jury was simultaneously instructed that the government had to, this element of without justification or excuse had to be proven by the government, but then at the same time was instructed that Mr. Ward bore the burden as to duress. I see that I'm almost out of time. If I may reserve the remainder of my time for a moment. Thank you, Your Honor. May it please the Court. My name is Benjamin Traster, and I represent the United States. During the course of a week-long trial, the defendant, perhaps more so than his co-defendant Anthony Armenta, was given every opportunity and substantial latitude to present the case the way he wanted and with the witnesses that were available to him. He intended to introduce the affirmative defense of duress, and he opened with it in the first few sentences of his opening statement. In fact, by the third paragraph and the ninth sentence, I think I calculated, he talked about he was there, he had a gun, and he fired twice. He testified, and he sponsored testimony that he hoped would corroborate his defense duress. And the District Court afforded him extraordinary latitude to do so. I would urge this Court to look at and review the opinion in the companion case, United States v. Armenta. While that case spoke about Armenta and talked about different issues, issues of severance of the trial, what the Court did in that case, what the Court talked about in that case, in essence, was referred to the clear and direct testimony of the victims. And I'm citing this in large part because, while the government would argue that there was no error with respect to the probable cause for the arrest, that there was no error with respect, there was no Doyle error, that there was no error with respect to the evidentiary issues, and we can touch on any or all of these, and that there was no error with respect to the duress instruction, and I'd actually like to come back to that because counsel just spoke of it. But the fact of the matter is what drove this case was the fact that you had three victims who testified, testified in clear and direct testimony. And all of that testimony was fully consistent with the defendant's duress defense, correct? It was not. Well, why not? All they knew is that Ward shot at them. He doesn't question that. He's saying that he was ordered by Armenta to do this. I assume that the only two people on the planet that know whether or not that's true are Mr. Ward and Mr. Armenta. How would any of those, the three victims, know what Mr. Armenta did or didn't do vis-a-vis Mr. Ward? There's a lot to unpack there. First of all, the duress defense is an objective standard. It has to be objectively reasonable and it has to show that the fear was well grounded. And of course that raises a number of issues with respect to the evidentiary decisions, I believe, that the district court made. But the fact is that the defendant's testimony, and this actually now circles back to something counsel was arguing with respect to the Doyle era. Yeah, I was just asking about the three kids. I understand. Okay. But the fact of the matter is that the defendant's testimony lacked any credibility because he told multiple stories. It was impossible to understand what the defendant was trying to establish with respect to the duress defense when he talked about and spoke of, if you look at his testimony, he talks about, first of all, in his interview with police, I believe he said, and this was brought out in his cross-examination, that the boys shot first. The three victims shot first. But then in his own testimony, he said he was up on rocks by the riverbank. And while he's up on the rocks, he's drinking a beer. He's got a .45 in his hand, by the way. He hears and sees Armenta shooting. And he makes a comment saying something like, why is he effing shooting? So he goes down. The problem with that testimony is that nobody saw Armenta shoot first. All three of the victims said Ward came from behind after Armenta comes out from wherever. Armenta turns to the boys in the boat and points the gun at them. And Ward comes down and, in fact, jumps on the windshield and says, get the eff out, get the eff out, banging on the windshield. That is not the testimony of somebody who was under duress. That is objectively something that the jury can decide. Was that a man under duress when Armenta has his gun on the boys in the boat? And by the way, Cody Adams, another name that comes up, had just walked away. He had just walked away. He was under the rocks as well. He got up and left. And so the fact of the matter is this duress defense is something that the jury can evaluate and it can be based on. Both the defendant's lack of credibility, his inconsistent statements, the multiple stories that he told during the course of the trial, and the victim's clear and direct testimony. I want to come back to and talk a little bit about the duress instructions that counsel just ended with. And I want to do it. I think the best way to explain what's going on with the duress instructions, Dixon, Taylor, is to talk about it frankly just with some simple examples. Take somebody who's got a gun and who is legitimately under arrest. Pointing that gun at somebody and they say, I don't really want to do this. I don't want to be doing this. But you know what? He's got that gun to me. I've got that gun on that other person. It's an assault because he's got the gun pointed. It's assault with a dangerous weapon. And his intent when he shoots is to do bodily harm. There's no question. His specific intent. But he doesn't want to do it. His mens rea is that. Is it an excuse? The duress would actually be an excuse in that case. And the fact of the matter is that is why, and we argued this, that is why the burden then shifts to the defendant. Well, but your co-counsel pointed out that in jury instruction number 30, the judge disagreed with you. The judge instructed the jury that the jury had to find that the government had the burden of proving assault for all of the four counts. And he specifically elucidated the definition of assault with ends with the prepositional phrase, without justification or excuse. So the judge apparently thought, contrary to you, that it was your burden to prove the lack of excuse that I think you just acknowledged that duress would be an excuse. I don't recall that. Instruction number 30? Yes. I don't recall that. But let me, if I can continue with my example, and I want to point out that counsel talked about footnote four in the Dixon case. One thing to look at in footnote four in the Dixon case is that it actually refers to a treatise and talks about when you have a heightened mens rea where the burden is on the government to disprove duress, that burden would be something like, and the treatise cites maliciously, without justification or excuse. So first of all, I do believe that the Taylor case is relevant to say the elements of assault with a dangerous weapon with intent to do bodily harm, 113A3, do not include without justification or excuse. Even though Taylor did not involve a crime that involves the element of the lack of justification or excuse, right? Well, I think it does, and I can explain why. Well, that was part of the removal of A3. Correct. All right. If you go back and you look at, and now we're not looking at an assault, we're looking at a murder, and you're looking at malice of forethought. Malice of forethought requires intentional and deliberate, an intentional and deliberate killing, or wanton and reckless disregard of human life. So at that point, there is no way for somebody to say, I don't want to do this. I really don't want to do this, but I'm going to do it because I'm being forced. When you have that kind of intent, intentional, deliberate, wanton and callous disregard for human life, and if the government has to prove that, that, a duress defense necessarily negates that element of the offense. The government comes in, if the government can prove malice of forethought, the government has proved, has proved beyond reasonable doubt that it wasn't duress. So at that point, if a court were to order, or sorry, instruct the jury that the burden had shifted, that would be error because it would make no sense. The government has already proved beyond reasonable doubt. So you're saying there would be no basis for a duress defense if you carried your burden on an offense that involved malice? No, absolutely not. The defense can bring up that defense. The defense still has to introduce that defense. What I'm saying is that the Dixon case, where it contemplates that the burden would not shift, it's that type of case where the defendant says, I was under duress and the government still has to prove where there's malice of forethought. What the consequence, the upshot would be, that it's either the government has proved malice of forethought or the government hasn't proved malice of forethought. What I'm suggesting is if the government has proved its murder case with malice of forethought, beyond a reasonable doubt, there would be no way for a defendant to show that they were under duress because of that extra type of mental... And therefore the burden would not shift, and you're saying that's not this case. That's exactly right. That is not this case. Well, then let's talk about the Doyle error, which we've not talked about, or the alleged Doyle error. Help me to understand why the defendant is not right, particularly when Barton, as the defendant points out, had one line. There are multiple lines in this case, and beyond that. So that's the first part. The second part is, my reading of your brief did not engage with the plain error argument at all. You just said there's no error. So I take it that if we were to find there's error, you're done on the plain error argument, right? I would apologize to the court. Unfortunately, there were a lot of issues. This is not a great excuse. There were a lot of issues in this brief, and the government should have argued that further. I would argue, at the very least, that there was no error. And certainly, given that the Toro Pelaya's case, and the May case, which came after Canterbury, Velarde, Massey, that those cases talk of circumstances that are a little bit still unlike this case. That those cases still said there was no Doyle error, and they were judged on plain error. They said there was no, first of all, there was no error. But there also was no plain error, because now you have a line of cases that talk about what the case law is in this circuit. Well, irrespective of the reasons that your brief is what it is, your brief is what it is. So it seems to me we're stuck with error. Is there error or not? Would you agree with that? There is not error. Okay, and explain why there is not error. Well, in the first place, he never invoked his right to remain silent. That was true in Canterbury also. I'm sorry? That was true, was it not, in Canterbury. Canterbury also had no inconsistent statements. And I want to point out two things with respect to that. I just don't understand how that answer is responsive. I assume that what your argument is, there is no Doyle error here because he didn't invoke his right to remain silent. Nor did Mr. Canterbury. He spoke. The problem in Canterbury, I think the panel concluded, was that he was questioned about why he never, in his voluntary interview, had mentioned that he had an entrapment offense. So he had been entrapped, just like the argument here that your counterpart, I assume, in the rebuttal argument, said why did he never mention the fact that he was under duress, that Armenta forced him to do it. How is that different from Canterbury? It's very different. Canterbury involved three questions. And they were not inconsistent with anything else that he testified to when he came to trial. In our case, the defendant spoke for 20 minutes after he waived his Miranda rights. And that is in the record. On page 55 of volume 1, 63 of volume 1, even in the motion to suppress, one of the law enforcement officers said, I believe Detective Black read him his rights. Well, that's the predicate for Doyle error. We wouldn't be talking about Doyle error if he didn't get his Miranda rights. So what does that tell us? He waived them and he spoke freely. OK. So then we go on, and Judge Backhart, to continue with your question. Then we go on to what actually happened at trial. So we can start with closing argument. At closing argument, the government talked about three different stories the defendant told. And then goes on to talk about, and now we're hearing about duress for the first time. And what counsel left out of the passage in the record is the first words out of the government's mouth after he says, this came up anew, is it lacks credibility. In counsel's- Yeah, it lacks credibility because he never said it, which is exactly what the government's argument was in Canterbury, that the infringement offense lacked credibility because he had never mentioned it. It lacks credibility because he's told so many stories at this point. It's not like Canterbury. Canterbury, the court specifically said, that what the issue is in Canterbury is, his testimony at trial was not inconsistent with what he said after he had spoken, after that partial silence. This is totally different. He came into court and his statements were entirely inconsistent with anything he had said before. He said, the boys shot first. In court he said, Armenta shot first. Then he takes the stand and he continues later and says, did the boys shoot first on direct examination? He says, I don't know. I don't know. He couldn't get a story straight. And so he's sticking to this duress story. We were entitled to ask him about that. And I would point out, counsel talks about cross-examination. Just bear with me for a second. I'm receiving a call. That's OK. No, just bear with me for a second. Let's assume on this, the who shot first business. And I had identified what seemed to be a few inconsistencies. And you alluded to one. Even if that is, let's go with the premise that's true. OK, who shot first, that kind of thing. The Canterbury would allow you to impeach about that. That is an inconsistent statement. How does that open the door to speak about the fact that this is the first time we've heard this defense of duress? It seems to me those are two different things. I would encourage the court to look at the paragraphs before those two paragraphs that the counsel references. And to look at what's after it. It all goes to the defendant's credibility. It does not go to an inference that his right to silence meant something. I don't think Doyle talks about intent of the prosecutor. It doesn't matter why you did it. It matters that you did it. That may be true. But the point is that what the government did was, the government was, it's not about intent. It's about what the government was questioning was these statements that lack credibility. And pointing out the defendant's credibility, not guilt because he was silent. When is Doyle not about credibility? In most instances, what you have is the template of the government saying, that person is not credible because they're making it up. They're making it up now. Why is this no different than that? Your Honor, I see my time has expired. You can talk to me. Talk to me. I just want to make sure I don't. The difference is, I would ask the court to take a look. And I can't remember. I think it's the Massey case. I think it's the Massey case. And in the Massey case, and maybe another one that's cited, there's a number of questions where there's questions by the government saying, you had an opportunity to sit down with the government here. And you had an opportunity when you were brought before the magistrate. And you had an opportunity when you were brought before the judge. And you had an opportunity when you did this. And after all this time, not talking at all about his credibility. It's not about his credibility. It's just you were silent. And because you were silent, that automatically means you're guilty. And that is simply not what happened in this case. It's just not what happened in this case. So there was no error. On the basis of Toro Pelaez, on the basis of May, these are cases that are very similar. That are very similar to what happened. They don't find error. They do go on and do more of the plain error analysis. But they don't find error on the basis of what happened. Seeing my time is way over, I appreciate the court's time. Thank you, counsel. Could I maybe just inquire the court, and I'm sorry I realize this is unusual. I do believe the government's brief is still under seal. I don't know if the court wanted to hear anything on that. I know that we have papers that we have filed. I would just reiterate a request that we made in our response to the defendant's motion to strike that our brief be unsealed. Be unsealed? Be unsealed. Okay. Thank you. Let's take that issue up first. On the sealing issue, what do you have to say about that? That depends on how the court resolves the motion to strike and whether or not the volume four pleadings should remain under seal. I don't want to reference specific sealing materials, but there is extensive briefing on that issue that relates to the instructional error and the argument that the government was making with regard to the peculiar knowledge that we had as stated in our trial memorandum of our defense. I understand the delicacy, but what would be the condition preceding for us making a determination as to whether to unseal or not? What is the decision you think we have to make? Yes. I believe that the question is whether or not the confidential materials that were referred to in the government's brief openly, because they were filed to the codependent's record, whether those arguments are proper and whether or not a limited portion of their brief should remain redacted because it discusses the substance of what was in those confidential materials. I don't want to take up too much time on this because it's non-substantive, but as I understand the briefing on the motion to strike, it was only that one sentence on page 48, right? That's correct. So the only question, am I right in thinking that the only question for us is whether or not to strike or redact that one sentence on page 48? That's correct. It's limited to that exact point, that specific argument. That's it. We have no objection to the unsealing of the rest of it. So if Your Honor wouldn't indulge me, I see that I'm almost out of time just to address the board. No, could you add back a minute 30 so that we'll end up with a minute 35 and then you... Thank you, Your Honor. So regarding Doyle, so if the court wishes to belatedly entertain plenary review, it should at least afford us an opportunity for supplemental briefing on that issue. But setting that aside, regarding plenary, the invocation argument that the government makes, that an invocation is required to exercise Doyle rights, that argument has also been waived, was presented only in a point heading in the brief, and we address extensively in our reply. I won't go into the details of why that's wrong. It involves a different right, ultimately the exercise of a Fifth Amendment right versus the due process right that is at issue with regard to Doyle there, fundamentally. So regarding Canterbury and Ballardet, both of those cases began with addressing inconsistencies. So in Canterbury, I think this is really important, there was a prior question about a contradiction between Mr. Canterbury's statement and testimony regarding his buying a silencer for protection. In other words, a disparity. That's how the cross-examination began. And then it went into details about the defendant's silence. And this court, nonetheless, despite that inconsistency, still parsed out separately the Doyle error and found Doyle error. And it did the exact same thing in Ballardet too. So regarding Toro, Pelez, and May, those cases, unlike this case, did involve actual factual inconsistencies that went to the heart of the defense. Specifically in Anderson, the defendant told the police he stole the car from a certain neighborhood but testified at trial that he stole the car from another location. And the prosecutor asked, why didn't he tell the same story? Whereas here, the questions that are being asked are specifically about silence. Regarding the clear and direct testimony of the victims, I just would like to finally point out, to the extent that goes to prong three of the plain error analysis, regarding Doyle, Mr. Ward can easily show a reasonable probability of a different outcome. It's a lower standard than a preponderance. The bullets and the shell casings track Mr. Ward's testimony. The complainant's testimony was, in many respects, consistent with Mr. Ward's testimony. I think the clock's going up now. Thank you, Your Honor. I appreciate your time. Thank you, counsel, for very fine arguments. The case is submitted, and we are in recess. Is Mr. Ward in recess?